1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10   RAYNE DEE WELLS JR,

11                    Plaintiff,

12          v.

13   STEVEN DEMARS et al,

14                    Defendants.

15

CASE NO. C11-5759 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

DECEMBER 21, 2012

16       This 42 U.S.C. §1983 civil rights action has been referred to the undersigned Magistrate

17   Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judges Rules MJR 1,

18   MJR 3, and MJR 4.

19       Defendants have filed a cross motion for summary judgment (ECF No. 33). The Court's

20   Report and Recommendation on plaintiff's motion for partial summary judgment is pending

21   before the District Court (ECF No. 41). Thus, this Report and Recommendation addresses only

22   Defendants' cross motion.

23

24

REPORT AND RECOMMENDATION - 1

1       The Court recommends that defendant Demars be given qualified immunity from suit

2 because the decision to place plaintiff on dry cell watch does not violate any clearly established

3 federal law. Further, there is no evidence before the Court showing that this defendant played

4 any part in the conditions of confinement or the decision to impose dry watch.  Therefore,

5 defendant Demars is entitled to dismissal of all other claims for lack of personal participation.

6 No defendant other than Mr. Demars has been served (ECF No. 7, 8, and 9).

7 STANDARD OF REVIEW

8       In federal court, summary judgment is required under Fed. R. Civ. P. 56(a) if the

9 evidence, viewed in the light most favorable to the nonmoving party, shows that there is no

10 genuine issue as to any material fact.  *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th

11 Cir.1997). The moving party bears the initial burden of establishing the absence of a genuine

12 issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may

13 be met by "'showing'-- that is, pointing out to the district court -- that there is an absence of

14 evidence to support the nonmoving party's case." *Id*. at 325.  Once the moving party has met its

15 initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify

16 facts that show a genuine issue for trial. *Id*. at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

17 242, 248 (1986).

18 FACTS

19       On October 7, 2008, plaintiff was transported from the Skagit County Jail to the

20 Washington Correction Center ("WCC") (ECF No. 33). Defendant Demars, who works at WCC

21 as the "Chief Investigator," alleges that WCC received a message from Sergeant Parker at the

22 Skagit County Jail.  Allegedly, Sergeant Parker had information that plaintiff had heroin with

23 him on the chain bus (ECF No. 33, Exhibit 2, page 2 and 7). Defendant Demars alleges that he

24

REPORT AND RECOMMENDATION - 2

1   called Sergeant Parker back and was told that Skagit County Jail staff had received "reliable,

2   confidential information that inmate Wells had 'heroin' concealed in his rectum" and that he

3   planned to sell the heroin at WCC (ECF No. 33, Exhibit 2).Plaintiff has provided no evidence to

4   the contrary, other than his unsubstantiated assertions (ECF No. 35, page 4).

5        Defendant Demars alleges that he investigated plaintiff's prior prison history and

6   determined that plaintiff had a history that included attempting to smuggle contraband into the

7   facility and possession of contraband (ECF No. 33, Exhibit 2). Defendant Demars alleges that he

8   spoke with Superintendent Doug Waddington and that Mr. Waddington approved placing

9   plaintiff on dry-cell watch (ECF No. 33, Exhibit 2, page 8).  Dry-cell watch is a form of

10  supervision that is used for the purpose of monitoring a prisoner's excrement for contraband.

11       When the chain bus arrived at WCC, plaintiff was placed in a white cotton suit that zips

12  up the back and locks at the neck, his arms and legs were taped and flex cuffed to the suit so that

13  no contraband could escape. Prison officials placed plaintiff in a cell that has no working toilet or

14  sink. If plaintiff needed to defecate or urinate he tells the watch officer, who is right outside the

15  cell observing him. *Id*. The dry-cell policy calls for the shift sergeant and two other corrections

16  officers to bring in a portable toilet. The policy provides detailed procedures for entering the cell,

17  removing the suit, searching for contraband in the excrement, and allowing the offender to clean

18  himself after using the bathroom. Plaintiff was on dry-cell watch until he provided three bowel

19  movements. In this case, that took eighteen and one half hours (ECF 33, Exhibit 2).

20       Plaintiff alleges that he requested to use the bathroom for his third bowel movement at

21  8:34 a.m. on October 18, 2012, but his suit was not unlocked and the toilet was not provided

22  until 10:28 a.m. and by that time he had "soiled himself with both urine and feces." (ECF No. 5,

23  page 5).

24

REPORT AND RECOMMENDATION - 3

1   No contraband was found and plaintiff was released from dry-cell watch.

2                                    DISCUSSION

3        A.      Qualified immunity.

4        Defendant Demars has raised the affirmative defense of qualified immunity (ECF No. 33,

5   page 6). A public official performing a discretionary function enjoys qualified immunity in a

6   civil action for damages, provided his or her conduct does not violate clearly established federal

7   statutory or constitutional rights of which a reasonable person would have known. *Harlow v.*

8   *Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Anderson v. Creighton*, 483

9   U.S. 635, 638 (1987) ("whether an official protected by qualified immunity may be held

10  personally liable for an allegedly unlawful official action generally turns on the 'objective legal

11  reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at

12  the time it was taken") (*quoting Harlow*, 457 U.S. at 818, 819); *Sorrels v. McKee*, 290 F.3d 965,

13  969 (9th Cir. 2002). Thus, qualified immunity "'provides ample protection to all but the plainly

14  incompetent or those who knowingly violate the law'". *Burns v. Reed*, 500 U.S. 478, 495 (1991)

15  (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is "an affirmative

16  defense that must be pleaded by a defendant official". *Harlow*, 457 U.S. at 815 (*citing Gomez v.*

17  *Toledo*, 446 U.S. 635 (1980)). The immunity is "*immunity from suit* rather than a mere defense to

18  liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (italics in original).

19       The Supreme Court established a two-part test for determining whether an official is

20  entitled to qualified immunity. The Court must determine whether the facts, taken in the light

21  most favorable to the plaintiff, demonstrate that the defendant's conduct violated a federal

22  statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by*

23  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In addition, the Court must ascertain whether

24

1   the federal statutory or constitutional right at issue was "clearly established" at the time of the

2   alleged violation. *Id*. at 201. Although the U.S. Supreme Court's holding in *Saucier* required that

3   the determination of a violation of a federal right be the initial inquiry, the Supreme Court later

4   held "that the *Saucier* protocol should not be regarded as mandatory in all cases, [however] we

5   continue to recognize that it is often beneficial". *Pearson v. Callahan*, 129 S. Ct. 808, 818

6   (2009).

7        For a law to be "clearly established," it must be sufficiently clear that a reasonable

8   official would understand that his or her action violates that right. *Anderson v. Creighton*, 483

9   U.S. 635, 640 (1987).  In the absence of binding precedent, the court may look to whatever

10  decisional law is available in order to determine whether or not the law was clearly established at

11  the time the alleged acts occurred. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985)

12  (citations omitted).

13       In 2008, when defendant Demars asked that plaintiff be placed on dry-cell watch, it was

14  not clearly established that an inmate had a right to avoid dry-cell placement based on suspicion,

15  or that any form of due process was needed prior to placement.

16       Prior to 1995, courts looked at the language in policies to determine if the policy created

17  a liberty interest by mandating or prohibiting the actions by state officials. In 1992, using this

18  test, the Ninth Circuit found that Washington State's dry-cell watch policy -- not federal law --

19  created a liberty interest, and that certain procedures were required to provide a prisoner on dry-

20  cell watch with due process. *Mendoza v. Blodgett*, 960 F.2d 1425 (9th Cir. 1992). In 1995, the

21  Supreme Court rejected this approach. *Sandin v. Connor*, 515 U.S. 472 (1995). The *Sandin* Court

22  held that:

23           States may in certain circumstances create liberty interests that are protected by
             the Due Process Clause. But these interests will generally be limited to freedom

24

1

2

3

> from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483-4 (citations omitted).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

        After the *Sandin* decision and prior to 2009, the Court is not aware of any Ninth Circuit decision holding that an inmate has a due process interest in avoiding dry-cell placement. Since 2009, the Ninth Circuit has had conflicting opinions, some holding that there is no due process needed for short term placement, and some holding that there is a due process interest when placement is over seven days long. *Meraz v. Reppond*, 2009 WL 723841(N.D. Cal 2009) (plaintiff was on dry-cell watch for three days. The court, at the preliminary screening stage, prior to service, held that although the conditions were harsh, his placement there was simply too brief to implicate the due process clause); *Harris v. Lappin*, 2009 WL 789756 * 10-12 (C.D. Cal 2009) (plaintiff was on dry-cell watch for eleven days in an allegedly unsanitary cell, the court denied a motion to dismiss, finding plaintiff had stated a viable claim. The *Harris* court also stated that *Mendoza v. Blodgett* still has persuasive value);*Chappell v Mandeville*, 2009 WL 900151 (E.D. Cal 2009) (plaintiff was on dry cell-watch for seven days, the court utilized a "privacy interest" analysis that was discussed in *Mendoza* and denied summary judgment finding there is a due process interest in avoiding dry-cell or "contraband watch"); *Fry v. Oleshea*, 2012 WL 951318 (N. D. Cal 2012) (plaintiff was on dry-cell watch for two days, the court employed a case by case analysis and found no liberty interest because the placement was too short or, in the alternative, the court granted qualified immunity from suit).

22

23

24

        When defendant Demars made the decision to have plaintiff placed on dry cell watch, the 1992 *Mendoza* case had been abrogated by the 1995 Supreme Court decision in *Sandin. See Mendoza v. Blodgett*, 960 F.2d 1425 (9th Cir. 1992); *Sandin v. Connor*, 515 U.S. 472 (1995).

1   Defendant Demars could reasonably have believed that his conduct did not violate clearly

2   established federal law.  Therefore, the Court recommends granting defendant Demars' motion

3   for summary judgment based on qualified immunity.

4           B.       Personal participation.

5           Defendant Demars also argues that he is entitled to summary judgment for lack of

6   personal participation in the alleged acts that occurred during the dry-cell watch, which he claims

7   violated his personal rights. (ECF No. 33, page 13-14). Plaintiff complains of the conditions he

8   was allegedly forced to endure while on dry-cell watch, including waiting for two hours to

9   defecate and soiling himself because of the delay.  (ECF No., 35, page 3). But, he has come

10  forward with no evidence to show that defendant Demars played any part in the delay.

11          A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of a

12  supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*, 436

13  U.S. 658, 694 n.58 (1978).  Thus, the theory of *respondeat superior* is not sufficient to state a

14  claim under § 1983.  *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982).

15          Personal participation is connected to causation. The inquiry into causation must be

16  individualized and focus on the duties and responsibilities of each individual defendant whose

17  acts and omissions are alleged to have caused a constitutional violation. *Leer v. Murphy*, 844

18  F.2d 628, 633 (9th Cir. 1988).

19          Plaintiff must allege facts showing how defendant caused or personally participated in

20  causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

21  A §1983 suit cannot be based on vicarious liability alone, but must allege that defendant's own

22  conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90

23  (1989). Because there is no evidence that defendant Demars participated in performing the dry-

24

1  cell watch in question, the Court recommends granting defendants' motion for summary

2  judgment. The Court also recommends denial of in forma pauperis status for the purpose of

3  appeal.

4         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

5  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

7  review by the district judge. *See* 28 U.S.C. § 63(b)(1)(C). Accommodating the time limit

8  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

9  December 21, 2012, as noted in the caption.

10        Dated this 19th day of November, 2012.

11

12

13                                          J. Richard Creatura
                                            United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 8